ORIGINAL

FILED
JAN 1 1 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**SUNSHINE DEVELOPMENT, INC.**
**P.O. Box 216**
**Waynesboro, Pennsylvania 27268**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA, by and through the UNITED STATES POSTAL SERVICE**

**Defendant.**

**Fed. Cl. No.** 08-22 C

## COMPLAINT

Plaintiff, Sunshine Development, Inc. ("Sunshine"), by its undersigned counsel, for its Complaint against Defendant, the United States of America by and through the United States Postal Service ("USPS" or "Postal Service"), alleges as follows:

## NATURE OF ACTION

1. This suit arises under a now-expired lease agreement between Sunshine and the Postal Service for a property owned by Sunshine located at 308 Lincoln Way East, Chambersburg, Pennsylvania ("Property"). The Property currently operates as the Chambersburg Post Office. The Postal Service failed to properly exercise a purchase option for the Property or to extend the lease. However, the Postal Service, believing that it has exercised the purchase option, has failed to vacate the Property or to compensate Sunshine for its continued use and possession of the Property beyond the lease term.

## PARTIES

2. Plaintiff Sunshine Development, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 11993 Broad Street, Rouzerville, Pennsylvania 17250.

3. Defendant, United States Postal Service, is an independent establishment of the Executive Branch of the United States Government.

## JURISDICTION

4. By letter dated October 12, 2007, Sunshine submitted a claim to USPS Contracting Officer, Ester Tinort, pursuant to the Contract Disputes Act requesting a final decision that the Postal Service failed to properly elect or exercise the purchase option under the Lease or to renew the Lease and that the Lease term would expire on October 14, 2007. A true and correct copy of this claim letter is attached hereto as Exhibit 1. Sunshine's claim letter expressly notified USPS that Sunshine was exercising its statutory right to elect to proceed under the Contract Disputes Act, as provided in paragraph 16 of Public Law 95-563.

5. More than sixty (60) days have elapsed since Sunshine submitted its Contract Disputes Act Claim and the Postal Service's Contracting Officer has not furnished a final decision to Sunshine. In accordance with 41 U.S.C. § 605(c)(5), the Contracting Officer is deemed to have denied Sunshine's claim.

6. The Postal Service has continued to occupy the Property without providing just compensation to Sunshine in violation of the Fifth Amendment of the Constitution.

7. The Court of Federal Claims has jurisdiction to hear this case under the Fifth Amendment of the Constitution, Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 601-613.

## FACTUAL BACKGROUND

8. On November 7, 1962, Sunshine and the Postal Service's predecessor, the U.S. Post Office Department, entered into a lease agreement for the Property ("Lease"). A true and correct copy is attached hereto as Exhibit 2. The Lease provided for a base term of twenty years with a ten-year renewal option as well as four five-year renewal options.

9. Paragraph 16 of the Lease also granted to the Postal Service a purchase option that allowed the Postal Service to acquire the property outright for a specified price at the end of the original Lease term or at the end of each renewal term. This provision required USPS to exercise the purchase option at least one year prior to the expiration of the original Lease term or the expiration of a renewal term. Paragraph 16 of the Lease specifically required "the Government shall give Lessor notice of election to purchase at least one year in advance of the [end of the applicable term]."

10. The Postal Service exercised the Lease's ten-year renewal optional and three five-year renewal options.

11. The third five-year renewal term expired on October 14, 2007.

12. In a letter to Sunshine dated September 27, 2006, Dennis J. Perry, a USPS Real Estate Specialist, stated that, "This letter is to notify you that US Postal Service . . . will be exercising its purchase right to the [Property]." This letter does not identify Mr. Perry as a contracting officer.

13. At all times relevant to this matter, including at the time the September 27, 2006 letter was sent to Sunshine, Mr. Perry held "Level I contracting authority" meaning that he possessed no contracting authority for the acquisition of real property. His contracting authority

for leasing was limited to leasing actions not in excess of $25,000 per year. The price specified in the Lease for the third five-year renewal term purchase option is $90,000.

14. In April of 2007, Sunshine obtained from the Postal Service for the first time documentation relating to Mr. Perry's actual delegation of contracting officer authority. Subsequently, by letter dated May 22, 2007, counsel for Sunshine wrote to Mr. Perry, advising that Sunshine had received no notice of exercise of the purchase option from a duly authorized contracting officer and that Sunshine expected the Lease to continue in full force and effect to its expiration.

15. The Postal Service has not otherwise attempted to exercise the renewal term option under the Lease for the Property.

16. By letter from its counsel dated October 5, 2007, Sunshine notified the Postal Service that Sunshine objected to the Postal Service's "holdover tenancy for any specific or additional term and at the current rental rate."

17. By letter dated October 12, 2007, Sunshine submitted a claim to USPS Contracting Officer, Ester Tinort, pursuant to the Contract Disputes Act requesting a final decision that the Postal Service failed to properly elect or exercise the purchase option under the Lease or to renew the Lease and that the Lease term would expire on October 14, 2007.

18. Following the expiration of the current Lease term on October 14, 2007, the USPS failed to vacate the Property and continues to occupy and utilize the Property.

19. The Postal Service has failed to compensate Sunshine for its occupancy and use of the Property after October 14, 2007. The Postal Service maintains that it is entitled to acquire the Property for a payment of $90,000 despite the failure of any authorized contracting officer to properly exercise the purchase option within the required time frame.

20. The Postal Service's Contracting Officer has not furnished a final decision to Sunshine in response to Sunshine's October 12, 2007 claim letter.

**COUNT I**
**USPS Failure to Exercise Purchase Option – Declaratory Judgment**

21. Sunshine repeats and incorporates the foregoing paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22. Mr. Perry's letter of September 26, 2006 was an ineffective notice of the Postal Service's exercise of its right to purchase the Property under the Lease.

23. At all times relevant, Mr. Perry was without authority to exercise the Postal Service's right to purchase the Property under the Lease.

24. The Postal Service failed to properly elect or exercise its right under the Lease to purchase the Property or to renew the Lease term.

25. The Postal Service's rights under the Lease to Purchase the Property or renew the Lease term have expired.

26. Because the Postal Service failed to properly exercise its right to purchase the Property or to new the Lease term, the Lease term expired on October 14, 2007 and the compensation owed Sunshine for the Postal Service's continued occupancy of the Property is no longer subject to or governed by the rental rates provided for in the Lease.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to sustain Plaintiff's appeal of the Defendant's deemed denial of its claim and enter judgment against Defendant, the United States Postal Service, declaring that:

(1) the United States Postal Service failed to exercise an option to purchase the Property in accordance with the Lease;

(2) the United States Postal Service's rights to purchase the Property or to renew the Lease term have expired;

(3) Sunshine is without obligation to sell the property to the Postal Service for the purchase option price specified in paragraph 16 of the Lease;

(4) the Lease term expired on October 14, 2007; and

(5) the compensation owed Sunshine for the United States Postal Service's continued occupancy of the Property beyond the Lease term is not subject to or governed by the rates specified in the Lease;

and awarding Sunshine it costs and attorneys fees pursuant to 28 U.S.C. § 2412 and as otherwise accorded by law.

**COUNT II**
**Improperly Exercised Purchase Option**

27. Sunshine repeats and incorporates the foregoing paragraphs 1 through 20 of this Complaint as though fully set forth herein.

28. Mr. Perry's September 27, 2006 letter to Sunshine was not an unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, acceptance of the Postal Service's purchase option for the Property.

29. The Postal Service representative purporting to exercise the Postal Service's purchase option for the Property was without authority to exercise the purchase option for the Property.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment against Defendant, the United States Postal Service, declaring that the United States Postal Service failed to exercise an option to purchase the Property, together with costs, and attorneys fees pursuant to 28 U.S.C. § 2412 and as otherwise accorded by law.

## COUNT III
## Claim for Payment for Holdover Tenancy

30. Sunshine repeats and incorporates the foregoing paragraphs 1 through 20 of this Complaint as though fully set forth herein.

31. The current Lease term for the Property expired on October 14, 2007.

32. By letter from its counsel dated October 5, 2007, Sunshine notified the Postal Service that it objected to the Postal Service's holdover tenancy and that Sunshine expected compensation at fair market rates for the Postal Service's occupancy beyond the Lease term.

33. The Postal Service continues to occupy and utilize the Property following the expiration of the current Lease term.

34. There is an implied-in-fact agreement for the Postal Service to compensate Sunshine at a fair market rate for its continued occupancy and use of the Property after October 14, 2007.

35. The Postal Service breached its implied-in-fact agreement by failing to compensate Sunshine for its continued occupancy and use of the Property after October 14, 2007.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment against Defendant, the United States Postal Service, in an amount to be proven at trial representing the fair market value for the United States Postal Service's occupancy and use of the Property between October 14, 2007 and January 14, 2008, and enter a declaration that the United States Postal Service is liable to Sunshine for compensation at a fair market rate to be proven at trial for the United States Postal Service's occupancy and use of the Property after October 14, 2007, together with interest, costs, and attorneys fees pursuant to 28 U.S.C. § 2412 and as otherwise accorded by law.

## COUNT IV
## Claim for Taking of Sunshine's Property

36. Sunshine repeats and incorporates the foregoing paragraphs 1 through 20.

37. At all times relevant to this claim, Sunshine owned the property located at 308 Lincoln Way East, Chambersburg, Pennsylvania.

38. The current Lease term for the Property expired on October 14, 2007.

39. The Postal Service continues to occupy and utilize the Property following the expiration of the current Lease term and has failed to compensate Sunshine at a fair market rate for such continued occupancy and use.

40. The Postal Service's continued occupancy and use of the Property after October 14, 2007 results in a taking of Sunshine's property without just compensation.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment against Defendant, the United States Postal Service, in an amount to be proven at trial, as just compensation for the Fifth Amendment "taking" of Plaintiff's Property after October 14, 2007 together with interest, costs, and attorneys fees pursuant to 28 U.S.C. § 42121 and as otherwise accorded by law.

Dated:

Respectfully submitted,

Stephen B. Hurlbut, Esquire
**AKERMAN SENTERFITT
WICKWIRE GAVIN**
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703)790-8750 (phone)
(703)448-1801 (fax)

**<u>Of Counsel</u>**:

J. Michael Littlejohn, Esquire
Hal J. Perloff, Esquire
**AKERMAN SENTERFITT
WICKWIRE GAVIN**
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703)790-8750 (phone)
(703)448-1801 (fax)

Counsel for Plaintiff SUNSHINE DEVELOPMENT, INC.

Sunshine Development, Inc.
POST OFFICE BOX 216
WAYNESBORO, PENNSYLVANIA 27268

TEL: (717) 762-6811 FAX: (717) 765-4313

October 12, 2007

EXHIBIT 1

Via Facsimile [336-665-2836] and Express Mail

Esther Tinort, Contracting Officer
Manager, Real Estate
U.S. Postal Service
Eastern Facilities Service Office
P.O. Box 27947
Greensboro, NC 27498-1103

Re: Contract Disputes Act Claim, Chambersburg, PA Main Post Office Lease

Dear Ms. Tinort:

Sunshine Development, Inc. ("Sunshine") hereby submits this claim pursuant to the terms of the Contract Disputes Act ("CDA"). In doing so Sunshine hereby exercises its right, including the right of election set forth in Paragraph 16 of Public Law 95-563, to elect to proceed under CDA and to have this claim and any disputes associated with the claim determined in accordance with the terms of CDA. Sunshine requests a final contracting officer's decision on this claim as soon as possible but not later than sixty days from the date you receive this claim. If you are not the proper contracting officer to decide this claim we request that you immediately forward this letter to the appropriate authorized contracting officer and advise us in writing of same. (Please note paragraphs 1 and 4 on page 6 that are revised from the version faxed to you yesterday.)

Background

The Lease for this facility was entered in 1962 for a base term of twenty years. The Lease also provides for a ten-year renewal option as well as four five-year renewal options. (Lease, Paragraph 5) The Postal Service ("USPS") previously exercised the ten year option as well as three of the five-year renewal options. The current renewal term expires on October 14, 2007. The Postal Service has not exercised its final renewal option. As explained below, that renewal option has now legally expired

The Lease also contains a purchase option provision (Paragraph 16) that allows USPS to purchase the property outright at the end of the original Lease term and at the end of each renewal term at a specified purchase price. The price for an option to purchase at the end of the current renewal term is $90,000. (Paragraph 16(5).) This provision also requires USPS to exercise the purchase option by giving Sunshine "notice" of USPS's "election to purchase at least one year in advance of" expiration of the original term or each renewal term. In a letter to Sunshine Development dated September 27, 2006, Dennis J. Perry, a USPS Real Estate Specialist, purportedly attempted to exercise the purchase option at the end of the term expiring on October 14, 2007. The letter does not identify Mr. Perry as a contracting officer and states,

"This letter is to notify you that the US Postal Service pursuant to the aforesaid provisions, *will be exercising* its purchase rights to the subject property . . ." (italics added.) In response to correspondence from Sunshine, Mr. Perry subsequently wrote in a December 6, 2006 letter that USPS had "elected to exercise its purchase option pursuant to paragraph 16(5) of the original lease."

In or about April of 2007, through documents received under the Freedom of Information Act, Sunshine discovered that Mr. Perry held no contracting authority for the acquisition of real property or for leasing actions in excess of $25,000 per year. The June 30, 2004 letter from Mr. Rudy Umscheid, Vice President Facilities, to Mr. Perry states as follows:

> "In accordance with the authority delegated to me as Vice President, I hereby delegate Level I contracting authority to administer real estate contracts subject to the following limitations:
>
> a. Leasing: Up to $25,000 per year . . .
>
> b. Real Estate Support for Leasing or Acquisition: Up to $25,000 per year
>
> c. Easements, Disposals, and Rights of ways: Up to $25,000 per action
>
> d. Subleasing: Up to $25,000 per year"

On May 22, 2007, counsel for Sunshine wrote to Mr. Perry, advising that Sunshine had received no notice of exercise of the purchase option "from a duly authorized Contracting Officer, therefore we expect the lease to continue in full force and effect." (No Postal Service representative has ever advised Sunshine that Mr. Perry did in fact have the requisite authority to exercise the purchase option.) There have been no other written or oral communications between the parties (except for letters written by counsel subsequent to May 22, 2007) concerning the Postal Service's purported exercise of the purchase option and USPS has never denied that Mr. Perry lacked contracting authority to exercise the Postal Service's purchase rights. USPS has never attempted to exercise the final renewal option for the facility under Paragraph 5 of the Lease.

<u>Sunshine's Position</u>

1. <u>Mr. Perry's September 27, 2006 letter did not constitute a binding election of the Lease's purchase option.</u>

The Postal Service's position, as set forth in a letter dated September 28, 2007, from Mr. Zwettler, Postal Service Counsel, is that "the purchase option could not be exercised before the lease expiration date . . . ." Hence, Mr. Perry's letter would be nothing more than notice of an intention to make an election or exercise of the purchase option. There is no support for this contention in the Lease. The Lease makes clear that an election must be made at least one year before the Lease expiration date. As stated above, Paragraph 16 of the Lease requires the Postal Service to "give the Lessor notice of its election to purchase at least one year in advance" of the

Lease term expiration. The Postal Service must give "notice of its *election*," not notice of *an intention* to make an election. Notice of an *intention* to make an election cannot satisfy the requirement of Paragraph 16, because the Postal Service could later determine not to act on its intention, or could form a new intention not to make the election, thus undermining and avoiding the one-year advance notice requirement. Under the terms of the Lease, if proper notice of the purchase option election is given by USPS, the Postal Service must actually purchase the property at the end of the Lease term. USPS failed to make such a commitment. Mr. Perry's notice to Sunshine of the Postal Service's purported future *intention* to make an election, as opposed to providing notice of an actual binding election, is ineffective under Paragraph 16 of the Lease.

The law is well-established that options must be exercised in strict compliance with their terms or will otherwise be ineffective. In Holly Corp., ASBCA No. 24975, 83-1 BCA ¶ 16,327, at 81,159 the Board explained that an option is "a contract to keep an offer open for a prescribed period, during which period the offer is irrevocable." Id. at 81,164. The party granting the option forgoes any opportunity to avoid performance and will be required to perform according to the terms of the offer in the event the option holder accepts it. Because the party granting the option relinquishes the right to avoid performance if the option is exercised, the courts and boards "construe the attempt to accept the terms offered under the option strictly." Id., quoting *Williston on Contracts*, § 61D (3d ed., 1957). The unwavering rule is that "the notice by which the power of an option holder is exercised must be unconditional and in exact accord with the terms of the option." Id. quoting *Corbin on Contracts* § 264 (1963). The Board has summarized this rule as follows:

> The acceptance of an option, to be effectual, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option. . . . An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither.

Id. at 81,165, quoting Civic Plaza Nat'l Bank v. First Nat'l Bank in Dallas, 401 F. 2d 193, 197 (8th Cir. 1968). Mr. Perry's letter failed to provide notice of a present election or exercise of the purchase option. Therefore, it was not unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option clause. Rather, it was ineffective. Sunshine requests a determination by the contracting officer under the Lease that Mr. Perry's September 26, 2006 letter was not an effective election or exercise of the purchase option and that option expired on October 14, 2006.

2. Mr. Perry lacked contracting authority to make a binding election of the purchase option.

An even more fundamental issue makes Mr. Perry's letter ineffective. Mr. Perry lacked contracting officer authority to bind the Postal Service to a purchase election. It is a fundamental principle of government contracts law that the Government is bound only by government agents acting within the scope of their authority to contract. Federal Crop Ins. Corp. v. Merrill, 332

U.S. 380 (1947); Hawkins & Powers Aviations, Inc. v. United States, 46 Fed. Cl. 238 (2000); Holly Corp., supra. The Postal Service's acceptance of the offer contained in the purchase option must "bind both parties." Holly Corp., supra. Mr. Perry lacked contracting authority to bind the Postal Service because his warrant of contract authority afforded him no property acquisition authority. While the Postal Service has been on notice of this key issue since at least May 2007, it has never denied this lack of authority.

The key to an effective election is issuance of a notice of election that binds the Postal Service. As noted in Holly Corp., supra, it is "the notice by which the power of an option holder is exercised . . . ." The required notice is, in effect, the acceptance of the lessor's offer to sell the property. In September 2006 such actions were controlled by Handbook RE-1 (August 1996), "Realty Acquisition and Management." Consistent with the foregoing case law, those regulations specifically require that contracting officers are responsible for accepting an offer to sell or "similar sales contract" and to "forward a letter of acceptance to the offeror by certified mail . . . ." Id. §463. Irrespective of this regulation, because the notice is the legal acceptance of a contractual offer, it must be made by a person with the requisite authority.

If the situation were reversed, and the Postal Service wished to avoid purchasing the property, it could simply disclaim the effectiveness of Mr. Perry's September 27, 2006 letter on the basis that he had no contractual authority to commit the Postal Service to such action. In fact, when it has suited its purpose, the Postal Service has not hesitated to assert a lack of contracting officer authority and has prevailed on many occasions. See for example Edwards v. United States, 22 Cl. Ct. 411 (1991) (contracting officer for a lease agreement had no authority to enter into an agreement on behalf of the Postal Service to amend a lease that would substantially increase the size of the facility even if he personally believed he had such authority); Frontier Assocs., PSBCA No. 4509, 02-2 BCA ¶32,046 (USPS attorney authorized to represent the Postal Service's interests in the case lacked contracting authority to enter into settlement agreement); Henry Burge and Alvin White, PSBCA No. 2431, 89-3 BCA ¶21,910 (Postal Service project manager had no authority to eliminate or relax specification requirements despite contrary representation to the lessor); Tymshare, PSBCA No. 206, 76-2 BCA ¶12,218 (purchase order expired when the contractor completed the required work in the full amount of the purchase order, and there was no agreement by an authorized contracting officer to extend, amend or increase the existing purchase order or to enter into a new contract for additional services); Europa Bakery, Inc., PSBCA Nos. 4994, 5172, 06-2 BCA ¶33,408 (lease could not be reformed on the basis of statements made by the Postal Service's District Manager, Support Services who served as the liaison between the contracting office in Windsor, CT and prospective and actual contractors in Puerto Rico, because the manager had no contracting authority).

The absence of contracting officer authority is not a one-way street, available only as a defense to an agency trying to avoid an obligation. The principle applies equally in the other direction. Stephen Zucker, Packages Servs. Plus, PSBCA Nos. 3396-3398, 96-2 BCA ¶28,282, involving contracts to operate contract postal units, is a good example. The contract provided for termination without fault on sixty days notice. A postal employee who was not a contracting officer sent a notice letter to the contractor purporting to cancel the contracts because of certain Inspection Service investigations. An authorized contracting officer sent a termination letter 29

days later. The Board allowed the contractor compensation for a period of 60 days from receipt of the notice from the authorized contracting officer, as opposed to a shorter period which would have applied if measured from the notice provided by the unauthorized employee.

Simply stated, in order to bind the Postal Service an individual must have actual contracting authority, and even individuals with actual authority cannot legally bind the Postal Service to agreements that are outside of that individual's stated authority. Federal Crop Ins. Corp., supra. Whether the action under scrutiny is an agreement on a contract modification, an amendment of a lease, an agreement to a new contract, a notification of contract termination, or an acceptance of an offer to purchase property under a lease purchase option, makes no difference. The principal focus of the analysis is whether the individual could legally bind USPS. Mr. Perry was not delegated acquisition authority and the regulations clearly state that contracting officers at his level have no such authority. Mr. Perry's delegation of authority is very clear. It states as follows:

> "In accordance with the authority delegated to me as Vice President, I hereby delegate Level I contracting authority to administer real estate contracts subject to the following limitations:
>
> a. Leasing: Up to $25,000 per year . . .
>
> b. Real Estate Support for Leasing or Acquisition: Up to $25,000 per year
>
> c. Easements, Disposals, and Rights of ways: Up to $25,000 per action
>
> d. Subleasing: Up to $25,000 per year
>
> The authority . . . is subject to limitations and conditions set forth in the *Purchasing Manual* and all other instructions and regulations related to Facilities contracting."

The applicable regulations related to facilities contracting include the RE-1 which is also very clear. It states that Level I contracting officers have the following authority:

> "b. *Site Acquisition*: None"

RE-1 (1996), Section 123.2.b. Even if the acceptance of the purchase option could be considered "leasing," (and it clearly is not) it still exceeded the annual dollar amount of his authority. Therefore, his purported attempt to accept the offer to sell the property contained in the purchase option could not legally bind USPS and was ineffective. Sunshine requests a determination by the contracting officer under the Lease that Mr. Perry lacked the requisite authority to exercise the purchase option or make a binding election thereunder, and that for these reasons the letter was not an effective election or exercise of the purchase option. Sunshine further requests a determination by the contracting officer under the Lease that the purchase option under Paragraph 16(5) has expired and that because the final renewal option under Paragraph 5 was never exercised by USPS, no further right to elect or exercise purchase option rights under Paragraph 16 now exists.

Request for Final Decision

Sunshine hereby requests a final decision of the contracting officer interpreting the Lease provisions and making the contractual determinations requested and outlined above. Specifically, Sunshine requests that the contracting officer issue a final decision making the following determinations:

1. The Postal Service failed to properly elect or exercise the purchase option under Paragraph 16 of the Lease because it failed to give Sunshine a proper notice of election at least one year prior to the end of the Lease term as required by the purchase option provision.

2. Mr. Perry's September 27, 2006 letter to Sunshine was not an effective election or exercise of the purchase option under Paragraph 16 of the Lease because he lacked the requisite contracting authority to undertake such an action.

3. Because the Postal Service failed to properly elect or exercise its rights under the purchase option provision contained in Paragraph 16 of the Lease within one year prior to expiration of the Lease term, the Postal Service's option rights have expired and Sunshine is no longer obligated to sell the property to the Postal Service for the price stipulated in Paragraph 16.

4. Because the Postal Service also failed to exercise its right to renew the Lease term, as set forth in Paragraph 5 of the Lease, by providing notice to Sunshine at least sixty days before the expiration of the current renewal term, the Lease shall expire on October 14, 2007, and the compensation owed to Sunshine for the Postal Service's continuing occupancy of the facility will no longer be subject to or governed by the rental rates stipulated in the Lease agreement.

As required by the CDA, a final contracting officer's decision is requested within sixty days of receipt of this claim.

Respectfully submitted,

SUNSHINE DEVELOPMENT, INC.

Nickson W. Oyer
President

cc: Dennis J. Perry
Stephen B. Hurlbut, Esquire

TRIPLICATE

POST OFFICE DEPARTMENT

LEASE

Exception to SF-2
Approved by Bureau of the Budget
April 1, 1959

1. This LEASE, made and entered into this 7th day of November, 1962 by and between

**Sunshine Development, Inc., a Corporation of the Commonwealth of Pennsylvania**

whose address is **207 Homewood Avenue, Waynesboro, Pennsylvania (P. O. Box 216)**

for **Sunshine Development, Inc., and Its** ~~heirs, executors, administrators~~, successors, and assigns, hereafter called the Lessor, and the UNITED STATES of America hereinafter called the Government:

WITNESSETH: The parties hereto for the consideration hereinafter mentioned covenant and agree as follows:

2. The Lessor hereby leases to the Government the following described premises, viz: **All that certain one story masonry building, providing approximately 16,296 sq. ft., net, inside measurements, on the first floor; together with platform area of approximately 1,964 sq. ft., net; and exclusive use of macadam driveway, parking and maneuvering areas, totaling approximately 25,478 sq. ft. Situate 308 Lincoln Way East, in the Borough of Chambersburg, County of Franklin and Commonwealth of Pennsylvania, on the southeast corner of Lincoln Way East and Third Street, and having a frontage of 212' on Lincoln Way East and a depth of 263' on Third Street to a public alley in the rear,**

to be used for postal purposes.

3. TO HAVE AND TO HOLD the said premises with their appurtenances for the term beginning **October 15, 1962** and ending with **October 14, 1982 (20 years in all)**

4. The government shall pay the Lessor an annual rental of: **Twenty-eight Thousand and 00/100** Dollars ($ **28,000.00**)

payable in equal installments at the end of each calendar month. Rent for part of month shall be prorated.

5. This lease may be renewed, at the option of the Government, for the following separate and consecutive terms and at the following annual rentals:

| | | | |
|---|---|---|---|
| **Ten (10)** | years at | $ **27,000.00** | per annum |
| **Five (5)** | years at | $ **18,000.00** | per annum |
| **Five (5)** | years at | $ **18,000.00** | per annum |
| **Five (5)** | years at | $ **18,000.00** | per annum |
| **Five (5)** | years at | $ **18,000.00** | per annum |
| | years at | $ | per annum |

provided notice be given in writing to the Lessor at least **sixty (60)** days before the end of the original lease term or any renewal term; all other terms and conditions of this lease shall remain the same during any renewal term.

6. The Lessor shall furnish to the Government, under the terms of this lease, as part of the rental consideration, the following:
**Lessor shall furnish heating system of sufficient size and capacity to maintain uniform temperature of 70 deg. F. in all areas based on the design temperature commonly in use in the locality, including, but not limited to, filters. Lessor**

EXHIBIT
2

**shall furnish all lighting fixtures, and agrees to provide and replace during the continuance of the lease all ballasts as needed. Lessor shall furnish plumbing fixtures, toilet facilities and utility meters, all as now installed. Lessor shall pay all taxes and shall properly protect all doors and windows according to requirements. Lessor shall furnish and pay for all water and sewerage service during the continuance of the lease. Lessor shall furnish air conditioning equipment, servicing of said equipment, including, but not limited to, the necessary refrigerant and filters,**

and the Lessor shall at Lessor's expense record this lease in the proper recording office.

7. The Lessor shall, unless herein specified to the contrary maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by the Lessor under this lease in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times enter and inspect the same and make any necessary repairs thereto.

8. The Government may sublet all or any part of the premises or assign this lease but shall not be relieved from any obligation under this lease by reason of any such subletting or assignment.

9. The Government shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government. Prior to expiration or termination of this lease the Government shall if required by the Lessor by notice in writing sixty days in advance of such expiration or termination, restore the premises to as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted.

10. (a) This lease may be terminated upon ninety days' notice in writing to the Lessor whenever the Post Office Department shall decide to move the office into a Government-owned building which shall have been provided for it. DELETED

(b) This lease may be terminated upon ninety days' notice in writing to the Lessor whenever, in the judgment of the Post Office Department, the growth of the service at that office renders additional room necessary and the Lessor is unable or unwilling to furnish suitable and sufficient additional space at an additional rental satisfactory to the Department. DELETED

(c) If any building or any part of it on the leased property becomes unfit for use for the purposes leased, the lessor shall put the same in a satisfactory condition, as determined by the Post Office Department, for the purposes leased. If the lessor does not do so with reasonable diligence, the Post Office Department in its discretion may cancel the lease. For any period said building or any part thereof is unfit for the purposes leased, the rent shall be abated in proportion to the area determined by the Post Office Department to have been rendered unavailable to the Post Office Department by reason of such condition.

11. No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this lease or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the lease be for the general benefit of such corporation or company.

12. The following paragraphs were deleted before execution:

**Clauses (a) and (b) of Paragraph 10 were deleted before execution.**

/ 15 MWO

13. The following paragraphs were added before execution:

**Paragraphs 14, 15, 16, 17 and 18 were added before execution.**

14. It is expressly understood between the parties hereto that the terms and conditions of the certain Agreement to Lease dated September 19, 1961, and any amendment or modification thereto, furnished by Lessor herein, and accepted by the Government on October 19, 1961, are made a part of this lease and are to be complied with as though fully set forth herein.

15. In the event of occurrence of any condition or conditions which would in the absence of the provisions of this Paragraph then give the United States Government or the Postmaster General a right to cancel this lease or a right to incur a cost for which it could obtain reimbursement pursuant thereto, the United States Government and the Postmaster General will not have said right or rights unless the United States Government shall have given written notice by registered mail of said occurrence to the assignee of moneys due or to become due hereunder and the mortgagees under any mortgage on the premises hereby leased whose names and addresses have been designated to the Government by Lessor and shall have afforded such assignee and mortgagee not less than 45 days opportunity or such additional time as the Postmaster General in his discretion shall allow after such mailing of such notice to cure the default by Lessor and the condition or conditions given rise to said right or rights.

15 a. It is agreed that the curative period set out in this paragraph does not control or govern the curative period that has been or may be determined upon as proper in connection with Paragraph 18 herein.

16. In consideration of the award of this lease contract, the Government shall have the option to purchase the fee simple title to the leased premises, including the underlying land, at the following respective times and prices:

| | |
|---|---|
| (1) At end of basic lease term | $ 180,000.00 |
| (2) At end of ten-year renewal option term | $ 150,000.00 |
| (3) At end of first five-year renewal option term | $ 120,000.00 |
| (4) At end of second five-year renewal option term | $ 90,000.00 |
| (5) At end of third five-year renewal option term | $ 90,000.00 |
| (6) At end of fourth five-year renewal option term | $ 90,000.00 * |

all in accordance with any applicable Federal statutes in affect now or hereafter while this lease is in effect; provided, however, that the Government shall give the Lessor notice of election to purchase at least one year in advance of the respective times set out next above.

## TAX ESCALATION CLAUSE RIDER

17. It is mutually understood and agreed that the rent herein reserved is based in part upon the payment by the lessor of general real estate taxes upon the land and the building appurtenant thereto in the sum of $ 2,000.00 per annum. It, therefore, is agreed that there shall be a readjustment of the rent hereby reserved in each year of the term hereby demised on the following basis:

(a) In the event that the amount of the general real estate taxes levied on said land and building for any tax year or part thereof within the term hereby demised shall be levied at a rate greater than the sum last-above mentioned, than after the lessor has paid such taxes the Government shall pay the lessor upon demand, accompanied by satisfactory proof as to correctness of the claim as additional rent due hereunder a sum equal to such excess; or in the event that the amount of general real estate taxes levied on said land and building for any tax year or part thereof within the term hereby demised shall be levied at a rate less than the sum last-above mentioned, the rent due hereunder shall be decreased by the amount of such decrease, it being understood that said readjustment of rent shall be made in each year of the term hereby demised including the terms of any renewal options. In the event that general real estate taxes are levied on the land only for any tax year or part thereof within the demised term, this entire paragraph shall be and remain operative in the same manner and to the same extent as though said taxes were levied on both land and building. The lessor shall pay the general real estate taxes levied hereunder before any fine, penalty, interest or cost may be added thereto for the non-payment thereof and at such time and manner and amount as to obtain any discount allowed by the taxing authority.

(b) The general real estate taxes referred to in subparagraph (a) of this Tax Escalation Clause which relate to a fiscal period of the taxing authority, a part of which period is prior to the commencement of the term of this lease, and a part of which is within the term of this lease, shall be so allocated that the portion of such taxes which that part of such fiscal period prior to the commencement of said lease term bears to such fiscal period shall be excluded in computing the amount of such taxes attributable to the demised term and the remainder thereof shall be considered as general real estate taxes levied within the demised term. A similar allocation shall be made to determine the amount of general real estate taxes which shall be considered as levied during the lease term or any renewal term where part of the fiscal period of the taxing authority is subsequent to the expiration of the lease term or any renewal term and a part of such fiscal period is within the lease term or a renewal term.

The lessor shall furnish the Government copies of all notices which may affect the valuation of said land and building for general real estate tax purposes or which may affect the levy or assessment of general real estate taxes thereon. Such copies shall be delivered or mailed within three days from the receipt thereof by the lessor to the Assistant Postmaster General, Bureau of Facilities, Post Office Department, Washington 25, D. C., or to such other officer as he may in writing direct. The Government may contest the amount or validity of any valuation for general real estate tax purposes or of any levy or assessment of any general real estate taxes by appropriate legal proceedings either in the name of the Government or the name of the lessor or in the names of both. The lessor upon reasonable notice and request by the Government shall join in any such proceeding, but the lessor shall not be subject to any liability for the payment of any liabilities, costs or expenses in connection with any proceeding brought by the Government and the Government hereby covenants to indemnify and save harmless the lessor from any such liabilities, costs or expenses. The lessor shall cooperate with the Government in any such contest or proceeding and execute any documents or pleadings required for such purpose provided the lessor shall reasonably be satisfied that the facts and data set forth in such documents or pleadings are accurate.

POD Form 1419
Mar. 1958



GPO 910447

NON-DISCRIMINATION CLAUSE

18. In connection with the performance of work under this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, and of the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, and by the rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's non-compliance with the non-discrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled in whole or in part and the contractor may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, and such other sanctions may be imposed and remedies invoked as provided in the said Executive order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of the foregoing paragraphs (1) through (6) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for non-compliance: Provided, however, that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

**This Paragraph supersedes Paragraph on the following page.**

POD Form
Mar. 1961 1421



GPO 908448

In connection with the performance of work under this contract, the Lessor agrees not to discriminate against any employee or applicant for employment because of race, religion, color, or national origin. The aforesaid provision shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Lessor agrees to post hereafter in conspicuous places, available for employees and applicants for employment, notices to be provided by the Government setting forth the provisions of the non-discrimination clause. The Lessor further agrees to insert the foregoing provision in all subcontracts hereunder, except sub-contracts for standard commercial supplies or raw materials.

DELETED DELETED

IN WITNESS WHEREOF the parties hereto have signed and sealed these presents as of the date first written above.

SEAL

Sunshine Development, Inc.
(Corporate Name)

(A) Pennsylvania Corporation)
(State)

By Nickson W. Dyer
Its President

By Richard W. Dyer
Its Secretary

WITNESSES: Roy L. F. Angle
Faerie L. Angle

WITNESSES:
Anne T. Krueger

THE UNITED STATES OF AMERICA

By

Title Deputy ASSISTANT POSTMASTER GENERAL

Approved as to Form:
Assistant General Counsel

POD Form 1449
June 1968

GPO 870350

## FORM OF ACKNOWLEDGMENT FOR CORPORATIONS

STATE OF Pennsylvania
COUNTY OF Franklin } ss:

Personally appeared before me, a notary public in and for the county and State aforesaid, Nickson W. Oyer

and Richard W. Oyer who are known to me to be the President and Secretary of the Sunshine Development, Inc., and to be the same persons who executed the foregoing lease, who depose and say that they know the seal of the said corporation, that the seal affixed to the above instrument is the seal of said corporation, and that it was affixed, and that they signed their names thereto, by authority of the said corporation, for the purposes set forth, and as their own free and voluntary act.

Done at Waynesboro, in the county and State aforesaid, this 7th day of November, 1962

[NOTARIAL SEAL]

Marie L. Angle
Notary Public.

My commission expires March 28, 1966.

NOTE.—If the corporation is without a seal, that portion of the acknowledgment referring to a seal should be stricken out, and on the blank line following this statement should be made: "and that the said corporation has no corporate seal."

My Office is [illegible] Township
Franklin County, Penna., Mail Address:
Route #3, Waynesboro, Penna.
My Commission Expires March 28, 19[illegible]

POD FORM 1454

POD, WASH., D. C.

Post Office Department

# LEASE

FOR

# POST OFFICE QUARTERS

Post Office Chambersburg, Pennsylvania

Lessor Sunshine Development, Inc.

Date

Term Twenty years with one ten-year renewal option and four five-year renewal options

Beginning October 15, 1962

Rent: $ 28,000.00 per annum.

Lease includes: Water, Sewerage Service and Air Conditioning Equipment

Form 1450

MORTGAGEE'S AGREEMENT Chambersburg, Pa.

(To be executed on a separate sheet and attached to lease before latter is recorded)

Date October 10, 1962

The undersigned, THE EMIGRANT INDUSTRIAL SAVINGS BANK, about to become the holder(~~s~~) of a mortgage in the sum of $ 266,000. on the property situated at the SEC Lincoln Way East (Route 30) and Third Street, Chambersburg, Franklin County, Pennsylvania,

hereby consent(s) to the leasing of said property to the Government for post-office purposes and agree(s) for itself, its successors, executors, administrators, and assigns that in the event it should become necessary to foreclose said mortgage the said mortgagee will cause the sale of said premises to be made subject to said lease. The subject mortgage matures ~~xxx~~ in 25 years (Insert date) and does (~~xxxxxx~~) contain a provision affecting its priority over the post office lease.

Witness: ____________________

Address: ____________________

THE EMIGRANT INDUSTRIAL SAVINGS BANK

By Arthur J. Voute, Vice President

Address: 51 Chambers Street, New York 8, New York

SUBSCRIBED AND SWORN to before me, a notary public, in and for New York County, State of New York, this 10th day of October, 1962

Marion E. Bartholomew
Notary Public.

My commission expires MARION E. BARTHOLOMEW Notary Public, State of New York No. 41-5203500 Queens County Cert. filed in New York County Term Expires March 30, 1964

9377

U.S. POSTAL SERVICE

LEASE AMENDMENT

DUPLICATE

THIS AMENDMENT is made by and between SUNSHINE DEVELOPMENT INC.
(Enter name(s) of Lessor(s))

hereinafter referred to as "lessor", and THE UNITED STATES POSTAL SERVICE, hereinafter referred to as "Postal Service".

WHEREAS, by lease dated November 7, , 19 62 , the lessor leased to the Postal Service certain premises known as Main Post Office
(Main post office, branch, station, etc.)

and located at 308 Lincoln Way East, Chambersburg, PA 17201
(Street Address, City, State and ZIP Code)

more particularly described on Exhibit A attached hereto and made a part hereof, and

WHEREAS, it has been mutually agreed between the lessor and the Postal Service that certain changes be made in the terms and conditions of the aforesaid lease which are of mutual benefit to the lessor and to the Postal Service.

NOW, THEREFORE, in consideration of the mutual covenants of the parties hereto, it is agreed as follows:

1. The lessor and the Postal Service hereby amend the lease by substitution of the following riders in lieu of all prior agreements regarding responsibility for the items covered by the riders *(check appropriate items below)*:

   Maintenance Rider ☒ Yes ☐ No  Utilities Rider ☒ Yes ☐ No  Taxes Rider ☐ Yes ☒ No

2. The lessor agrees as a condition precedent to the Postal Service's assumption of obligation to pay for maintenance, utilities or taxes, as provided for in this amendment, to perform the following required maintenance items at the lessor's sole cost and expense:

   As listed on Exhibit "B" attached hereto.

3. The lessor shall be and remain responsible for correcting all items of deferred maintenance existing at the time this amendment becomes effective whether or not such items are listed above and regardless of any acceptance of work done by the lessor to correct the items listed above, providing the Postal Service identifies such items of deferred maintenance within twelve months of the effective date of the Postal Service's assumption of obligations to pay for maintenance, utilities or taxes under this amendment.

4. In further consideration of this amendment the lessor agrees that the annual rent under this lease shall be adjusted downward, and that, commencing with the effective date of this amendment, and continuing until the beginning of any future option period, the annual rent will be: $26,176.00

5. It is further agreed that, in the event the Postal Service exercises any available renewal options under the present contract, the rent for the option periods will be as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| From | October 15, 1982 | to | October 14, 1992 | at $ | 25,273.00 | per annum. |
| From | October 15, 1992 | to | October 14, 1997 | at $ | 17,150.00 | per annum. |
| From | October 15, 1997 | to | October 14, 2002 | at $ | 17,150.00 | per annum. |
| From | October 15, 2002 | to | October 14, 2007 | at $ | 17,150.00 | per annum. |
| From | October 15, 2007 | to | October 14, 2012 | at $ | 17,150.00 | per annum. |
| From | | to | | at $ | | per annum. |
| From | | to | | at $ | | per annum. |
| From | | to | | at $ | | per annum. |

6. By execution of this amendment, the lessor hereby grants the Postal Service an option to purchase the fee simple title to the leased premises at any time during the remaining term of this lease, including the term of any lease renewal options subsequently exercised, by providing written notice of the exercise of the option to purchase to the lessor. The purchase price will be at the fair market value of the premises at the date of the exercise of this option, unencumbered by the Postal Service lease, as determined by Postal Service appraisal. If the lessor disagrees with the Postal Service appraisal, the lessor shall have a period of one hundred twenty (120) days to obtain an appraisal at the lessor's expense. Thereafter, the parties will attempt to negotiate a final purchase price. If agreement on price cannot be reached, the purchase price will be determined by an appraiser selected by the lessor from a list of three appraisers furnished by the Postal Service. Each of the three appraisers must be a designated appraiser of a recognized national professional appraisal organization or society. The cost of the third appraisal will be equally shared between the lessor and the Postal Service.

7. If a price is determined by a third appraisal as provided in paragraph 6 of this amendment, that price will be binding on both parties, except that the Postal Service may elect not to purchase or to purchase at the price of the higher of the two prior appraisals if the price of the third appraisal exceeds the price of the higher of the two prior appraisals and the lessor may elect not to sell or to sell at the price of the lower of the two prior appraisals if the price of the third appraisal is below the price of the lower of the prior two appraisals. If the Postal Service elects not to buy or the lessor elects not to sell under the foregoing provision, the lease as amended will continue in full force and effect, and the Po[illegible] will not be allowed again to exercise its option to purchase for twelve (12) months from the date of the third appraisal and then only on [illegible] to pay the reasonable costs of any lessor appraisal.

GOVERNMENT EXHIBIT B

PS Form 7448

8. This option is in addition to any other pu[rcha]se options available under the lease of this proper[ty. If] the Postal Service exercises this option to purchase, the lessor will convey the prope[rty] by good and sufficient warranty deed, free and clea[r] of all encumbrances. The Postal Service will obtain its own title evidence and surveys, and will reimburse the lessor for reasonable expenses for recording fees, transfer taxes, mortgage prepayment costs, and similar expenses incidential to closing, not including the cost to the lessor of any appraisals obtained under paragraph 6 of this amendment.

9. Settlement will be scheduled to take place within 90 days after the purchase price has been determined. The purchase price will be paid as follows:

   a. monthly payments in the amount of the current rent as of the date of settlement for the period of months of the remaining lease term *(not including the period of any option not yet exercised)*, or 84 months, whichever is the longer period;

   b. the balance of the purchase price at the time of closing.

Payments are of principal only, with no interest due the lessor.

10. Within thirty (30) days after the date of execution, the lessor will record this lease amendment at the lessor's expense and immediately thereafter provide evidence of the recording to the Postal Service.

11. All provisions of the aforementioned lease unaffected by this amendment are hereby confirmed and shall remain the same.

12. The Postal Service's assumption of obligations to pay for maintenance, utilities or taxes under this amendment shall be effective as follows:

   a. If any items of deferred maintenance are identified in paragraph 2 hereof, then on the first day of the month following completion by the lessor and acceptance by the Postal Service of the required work.

   b. If no items of deferred maintenance are identified in paragraph 2 hereof, then on the first day of the month following acceptance of this amendment by the Postal Service or on October 1, 1980, if the phrase "October 1, 1980" appears immediately following this sentence and the Lessor's signed copies of this amendment are received in the appropriate office of the Postal Service within 60 days after the date of the letter transmitting this amendment to the lessor for signature.

---

IN WITNESS WHEREOF, the parties hereto have signed and sealed these presents this day of June 24th 19 81.

WITNESSES: [signature]

[signature]

(Telephone No. of Lessor)

ACCEPTED by the undersigned for the Postal Service this 1st day of July, 19 81

WITNESS:

[signature]
Linda A. Retallick, Realty Management and Acquisition Analyst

THE UNITED STATES POSTAL SERVICE

By: [signature]
A. J. ACIERNO, General Manager

Title: Field Real Estate and Buildings Office
(Contracting Officer)

NOTE: Certain information provided by the lessor formed the basis of this Agreement. Lessors are cautioned that the penalty for making false statements or representations is contained in 18 U.S.C. Section 1001.

U.S. POSTAL SERVICE

# LEASE AMENDMENT RIDERS

(Applicable Rider checked)

[X] A. MAINTENANCE

1. **Obligations of the Postal Service**

The Postal Service shall keep the demised premises in good repair and tenantable condition, except that the Postal Service will not be obligated to make any repairs which are the responsibility of the lessor as specified in Paragraph 2 of this rider. The term "demised premises" as used in this paragraph includes the improvements thereon and the appurtenances thereto, and any and all equipment and fixtures furnished or to be furnished by the lessor under this lease. The Postal Service's responsibilities as stated herein shall be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises, equipment, fixtures, improvements and appurtenances in proper condition.

2. **Obligations of the Lessor**

The lessor will be responsible for all structural repairs to the demised premises; for repairs resulting from Acts of God, or acts of the public enemy; for repairs to all common or joint use areas that may be included as part of this lease agreement; for repairs resulting from defects in building construction or installation of equipment, fixtures and appurtenances furnished by the lessor; for repairs resulting from fire or other casualty or calamity, unless such damage arises from the act or the negligence of the Postal Service's agents or employees; and for any repairs in postal maintained areas made necessary by any failure of a facility element for which the lessor is responsible. Structural repairs as used in this paragraph shall be limited to the foundation, bearing walls, floors, excluding the floor covering, column supports, and the roof system, including but not limited to roof covering, flashing, and insulation.

[X] B. UTILITIES

As of the effective date of this Amendment, the Postal Service shall be responsible for paying the following utilities:

_______________

_______________

_______________

All other utility payments shall be and remain the obligation of the lessor under the lease.

[ ] C. TAXES

1. Upon demand by the lessor, the Postal Service shall reimburse the lessor for all general real estate taxes paid after the effective date of this rider. The lessor shall submit with his claim for reimbursement satisfactory proof of payment and correctness of the tax bill. General real estate taxes are taxes which are assessed on an ad valorem basis, against all taxable real property in the taxing authority's jurisdiction without regard to benefits to the property, for the purpose of funding general governmental services. Presentation of tax bills shall be made to the office shown in paragraph 3 of this rider. The lessor shall pay the general real estate taxes covered here before any fine, penalty, interest or cost may be added thereto for the non-payment thereof and at such time and manner and amount as to obtain any discount allowed by the taxing authority. If the lessor fails to do so, the Postal Service shall only reimburse the lessor for the amount that would have been paid had the lessor done so. The lessor shall pay all assessments and fees of every kind and nature other than general real estate taxes without reimbursement by the Postal Service.

2. If a part of said general real estate taxes applies to any period prior to the commencement of this amendment or subsequent to the expiration of the term of this lease and the remainder of the general real estate taxes applies to the period of time within the term of this amendment and this lease, the Postal Service shall be liable to reimburse the lessor in the aforesaid manner for only that portion of said taxes applying to the period of time within the term of the amendment and the lease.

3. The lessor shall furnish the Postal Service copies of all notices which may affect the valuation of said land and buildings for general real estate tax purposes or which may affect the levy or assessment of general real estate taxes thereon. Such notices shall be delivered or mailed within three days from the receipt thereof by the lessor to:

_______________

_______________

_______________

VOL 839 PAGE 682

PS Form 7416-B

or to such other office as the Postal Service may later in writing direct. The lessor shall cause payment of said general real estate taxes to be made under protest when requested to do so by the Postal Service. The Postal Service may contest the amount of validity of any valuation for general real estate tax purposes or of any levy or assessment of any general real estate taxes by appropriate legal proceedings either in the name of the Postal Service or the name of the lessor or in the names of both. The lessor, upon reasonable notice and request by the Postal Service, shall join in any such proceedings, but the lessor shall not be subject to any liability for the payment of penalties, costs or expenses in connection with any proceedings brought by the Postal Service, and the Postal Service hereby covenants to indemnify and save harmless the lessor from any such penalties, costs, or expenses. The lessor shall cooperate with the Postal Service in any such proceeding and execute any documents or pleadings required for such purpose provided the lessor shall be reasonably satisfied that the facts and data set forth in such documents or pleadings are accurate.

EXHIBIT "A"

FACILITY: Post Office
Chambersburg, PA 17201

LEGAL DESCRIPTION:

ALL that certain one story masonry building, providing approximately 16,196 sq. ft., net, inside measurements, on the first floor; together with platform area of approximately 1,964 sq. ft., net; and exclusive use of macadam driveway, parking and maneuvering areas, totaling approximately 25,478 sq. ft.

SITUATE 308 Lincoln Way East, in the Borough of Chambersburg, County of Franklin and Commonwealth of Pennsylvania, on the southeast corner of Lincoln Way East and Third Street, and having a frontage of 212' on Lincoln Way East and a depth of 263' on Third Street to a public alley in the rear, to be used for postal purposes.

*State of Penna.*
*County of Franklin* } S.S.
Recorded in the office for Recording Deeds, etc. in and for said county in Deed Book No. 839 Page 580 etc.
Witness my hand and seal of the said office this 6th day of July A. D. 1981
David W. Bowers
Recorder

VOL 839 PAGE 584

EXHIBIT "B"

FACILITY: Post Office
Chambersburg, PA 17201

DEFERRED MAINTENANCE ITEMS:

The Lessor agrees to complete the following items of deferred maintenance that have been identified prior to entry into the Lease Amendment Program. The lease amendment will take effect on the first day of the month following completion of these items and acceptance by the Postal Service of the work required.

1. Patch cracks on dock and ramp edge at dock.

2. Exterior painting as required.

3. Repair roof and second level downspouting.

4. After roof repairs have been completed replace stained ceiling tiles.

5. Replace electrical switches as required.

**Sunshine Development, Inc.**

Area Code 717
Phone 762-6811

P. O. Box 216
Waynesboro, Pa.

207 Homewood Ave.

## RESOLUTION

At a Special Meeting of the Board of Directors of Sunshine Development, Inc. at the Corporate Office, 11993 Broad Street, Rouzerville, Pennsylvania on May 22nd 1981 it was resolved that the President, Nickson W. Dyer, be authorized to sign all documents pertaining to the United States Postal Service Lease Amendment for the Chambersburg Post Office, Chambersburg, Pennsylvania.

I hereby certify that I am Secretary of Sunshine Development, Inc. and that the above Resolution is a true copy of the Resolution adopted at the Board of Directors meeting on the above date.

In witness whereof I have hereunto set my hand and the corporate seal this 22nd Day of May 1981.

Alma W. Dyer (signature)

Alma W. Dyer, Secretaey

FORM OF INDIVIDUAL ACKNOWLEDGEMENT

State of Pennsylvania )
) SS:
County of Philadelphia )

On this the 1st day of July, 1981, before me, Mary Lou Glenn, the undersigned officer, personally appeared A. J. Acierno, known to me to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Mary Lou Glenn

MARY LOU GLENN, NOTARY PUBLIC
PHILADELPHIA, PHILADELPHIA COUNTY
MY COMMISSION EXPIRES MAR. 11, 1985
Member, Pennsylvania Association of Notaries

I do hereby Certify that Grantee precise residence and complete post office address is Box 216 Fayetteville Pa (Sunshine Dev. Inc.)
Witness my hand this ... day of July, 1981

ENTERED ON RECORD
JUL - 6 1981
Recorder for Franklin Co.
TIME.........................